**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| DEADRA POWELL, Individually and for Others Similarly Situated<br><br>v.<br><br>LASALLE CORRECTIONS, LLC | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

### ORIGINAL COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1. Deadra Powell (Powell) brings this collective action to recover unpaid overtime and other damages from Lasalle Corrections, LLC (Lasalle).

2. Powell worked for Lasalle as a Licensed Nurse Practitioner (LPN) at Lasalle's Richwood Correctional Center in Monroe, Louisiana.

3. Like the Putative Class Members (as defined below), Powell regularly worked more than 40 hours in a week.

4. But Lasalle did not pay for all the hours they worked.

5. Instead, Lasalle automatically deducted 30 minutes a day from these employees' work time for so-called meal breaks.

6. Powell and the Putative Class Members were thus not paid for that time.

7. But Lasalle fails to provide Powell and the Putative Class Members with *bona fide* meal breaks and mandatory meetings.

8. Instead, Lasalle requires Powell and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

9.      Lasalle's auto-deduction policy and off the clock work policy violates the Fair Labor Standards Act (FLSA) by depriving Powell and the Putative Class Members of overtime pay for all overtime hours worked.

10.      Further, Lasalle uniformly requires Powell and the Putative Class Members to attend daily briefings "off the clock" before their shifts.

11.      But Powell and the Putative Class Members were not paid for the "off the clock" work.

12.      Lasalle's mandatory pre-shift briefing practice violates the FLSA by depriving Powell and the Putative Class Members of overtime pay for all overtime hours worked.

## JURISDICTION & VENUE

13.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.      This Court has general personal jurisdiction over Lasalle because Lasalle is domestic corporation headquartered in Ruston, Louisiana.

15.      Venue is proper because Lasalle maintains its headquarters in Ruston, Lincoln Parrish, Louisiana, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

16.      Powell worked for Lasalle as an LPN at Lasalle's Richwood Correctional Center in Monroe, Louisiana, from approximately March 2016 until January 2021.

17.      Throughout her employment, Lasalle classified Powell as non-exempt and paid her on an hourly basis.

18.      But Lasalle subjected Powell to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

19.     Additionally, throughout her employment, Lasalle required Powell to attend daily pre-shift briefings "off the clock" for which she was not paid.

20.     Powell's written consent is attached as **Exhibit 1**.

21.     Powell brings this action on behalf of herself and other similarly situated hourly, non-exempt Lasalle employees who were subject to Lasalle's automatic meal break deduction policy and/or Lasalle's mandatory pre-shift briefing practice.

22.     Lasalle uniformly requires all these employees to remain on-duty and perform work throughout their shifts, including during their unpaid "meal breaks," and/or requires them to attend mandatory pre-shift briefings "off the clock."

23.     The collective of similarly situated employees is defined as:

> **All hourly, non-exempt Lasalle employees who received an automatic meal period deduction and/or were required to attend pre-shift briefings at any time during the past 3 years ("Putative Class Members" or "Putative Class").**

24.     The Putative Class Members are known and readily identifiable through Lasalle's business and personnel records.

25.     Lasalle is a domestic limited liability company that maintains its headquarters in Ruston, Louisiana.

26.     Lasalle may be served with process by serving its registered agent: **William K. McConnell, 192 Bastille Lane, Suite 200, Ruston, Louisiana 71270**, or wherever he may be found.

### COVERAGE UNDER THE FLSA

27.     At all relevant times, Lasalle was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28.     At all relevant times, Lasalle, as an institution primarily engaged in healthcare, was an enterprise within the meaning of Section 3(r)(2)(A) of the FLSA, 29 U.S.C. § 203(r)(2)(A).

29.     At all relevant times, Lasalle was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(B) of the FLSA, 29 U.S.C. § 203(s)(1)(B), because Lasalle, is engaged in the operations of a healthcare facility and an institution primarily engaged in providing healthcare services.

30.     Lasalle uniformly deducted 30 minutes/shift from Powell and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

31.     As a result, Lasalle failed to pay Powell and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

32.     Lasalle's automatic meal break deduction policy, which deprives Powell and the Putative Class Members of overtime compensation for the weeks in which these workers work over 40 hours, is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

33.     Lasalle bills itself as "an established developer and operator of correctional centers throughout the States of Louisiana, Texas, New Mexico, Arizona, and Georgia."[1]

34.     Lasalle employs patient care workers, including Powell and the Putative Class Members, to provide healthcare services and treat incarcerated persons in its various corrections facilities.

35.     Lasalle uniformly classifies these employees as non-exempt from overtime and pays them on an hourly basis.

---

[1] https://lasallecorrections.kdm.com/ (last visited March 24, 2023).

36.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

37.     For example, Powell worked for Lasalle as an LPN at Lasalle's Richwood Correctional Center in Monroe, Louisiana from approximately March 2016 until January 2021.

38.     As an LPN, Powell's primary responsibilities included providing direct patient care to inmate patients at the Lasalle Correctional Facility, working with doctors regarding inmate care, assisting in medical procedures, administrating medicine, and addressing medical complaints made by inmate patients.

39.     Throughout her employment, Lasalle classified Powell as non-exempt and paid her on an hourly basis.

40.     Throughout her employment, Lasalle subjected Powell to its common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

41.     Further, throughout her employment, Lasalle required Powell to attend daily pre-shift briefings meetings "off the clock."

42.     Powell and the Putative Class Members performed their jobs under Lasalle's supervision, and using materials, equipment, and technology approved and supplied by Lasalle.

43.     Lasalle requires Powell and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

44.     At the end of each pay period, Powell and the Putative Class Members received wages from Lasalle that were determined by common systems and methods that Lasalle selected and controlled.

45.     Lasalle requires its hourly, non-exempt employees, including Powell and the Putative Class Members, to record their hours worked using Lasalle's timeclock system (Kronos).

46.     Further, Lasalle subjects its hourly, non-exempt employees, including Powell and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

47.     Specifically, Lasalle automatically deducts 30 minutes from Powell and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

48.     But Lasalle fails to provide Powell and the Putative Class Members with *bona fide* meal periods.

49.     Instead, Lasalle requires Powell and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

50.     This unpaid time is compensable under the FLSA because Lasalle knew, or should have known, that (1) Powell and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 30 minutes.

51.     Lasalle failed to exercise its duty to ensure Powell and the Putative Class Members were not performing work that Lasalle did not want performed during their unpaid "meal breaks."

52.     Despite accepting the benefits, Lasalle did not pay Powell and the Putative Class Members for the compensable work they performed during their "meal breaks."

53.     Thus, under Lasalle's uniform automatic meal break deduction policy, Powell and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours in violation of the FLSA.

54.    Further, Lasalle also requires Powell and the Putative Class Members to attend mandatory pre-shift briefings "off the clock."

55.    Specifically, Lasalle requires Powell and the Putative Class Members to arrive at their assigned correction facility before their scheduled shifts to receive "handoff report" from the patient care staff that are completing their scheduled shifts.

56.    During these mandatory pre-shift briefings, Powell and the Putative Class Members are informed which patients are assigned to them and discuss the status of said patients and their treatments to ensure there is no disruption in their patient care and treatment.

57.    These mandatory pre-shift briefings typically last approximately 15 minutes and occur before Powell and the Putative Class Members clock in for their shifts.

58.    Lasalle, however, does not pay Powell and the Putative Class Members for these mandatory "off the clock" pre-shift briefings.

59.    But the FLSA requires Lasalle to pay Powell and the Putative Class Members for this compensable work time.

60.    Indeed, Lasalle mandates and requires Powell and the Putative Class Members to complete these pre-shift briefings; the pre-shift briefings are completed on Lasalle's premises; the pre-shift briefings are controlled by Lasalle; and the pre-shift briefings are undertaken primarily for Lasalle's (and its business') benefit.

61.    Further, these pre-shift briefings are necessary to the principal work Powell and the Putative Class Members perform – providing healthcare services to incarcerated persons in Lasalle's prison and detention facilities.

62.    Lasalle requires Powell and the Putative Class Members to complete these pre-shift briefings to ensure there is no disruption in the care these employees provide to the inmate patients in Lasalle's detention facilities.

63.     Thus, these mandatory pre-shift briefings are integral and indispensable to Powell and the Putative Class Members' patient care work.

64.     Indeed, Lasalle could not have eliminated the pre-shift briefings altogether without impairing Powell and the Putative Class Members' ability to perform their patient care work.

65.     Lasalle's uniform pre-shift briefing practice violates the FLSA by depriving Powell and the Putative Class Members of overtime pay for all overtime hours worked because Lasalle fails to include time these employees spend performing compensable work (completing the mandatory pre-shift briefings) in their total hours worked.

66.     Lasalle knows Powell and the Putative Class Members routinely perform work "off the clock" before their shifts and/or during their unpaid meal breaks because Lasalle expects and requires these employees to do so.

67.     But Lasalle does not pay Powell and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA.

68.     Powell worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

69.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

70.     Indeed, Lasalle typically schedules Powell and the Putative Class Members to work 12-hour shifts for up to 4 days a week.

71.     And Powell and the Putative Class Members regularly are also required to work before their shifts and/or during their unpaid meal breaks "off the clock" in order to complete their job duties and patient care responsibilities.

72.     As a result, Powell and the Putative Class Members work in excess of 40 hours in a typical workweek.

73.     When Powell and the Putative Class Members worked more than 40 hours in a workweek, Lasalle did not pay them 1.5 times their regular hourly rate for all overtime hours worked due to Lasalle's failure to include time these employees worked "off the clock," either before their shifts and/or during their unpaid meal breaks, in their total number of hours worked in a given workweek.

74.     Lasalle knew, or should have known, it was subject to the FLSA, including its overtime provisions.

75.     Lasalle knew, or should have known, the FLSA requires it to pay employees, including Powell and the Putative Class Members, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

76.     Lasalle knew, or should have known, Powell and the Putative Class Members worked more than 40 hours in a week.

77.     Lasalle knew, or should have known, Powell and the Putative Class Members regularly worked during their unpaid meal breaks because Lasalle expected and required them to do so.

78.     Lasalle knew, or should have known, Powell and the Putative Class Members regularly worked "off the clock" before their shifts because Lasalle required them to attend mandatory pre-shift briefings.

79.     Lasalle knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

80.     Lasalle knowingly, willfully, and/or in reckless disregard carried out these illegal policies and practices that deprived Powell and the Putative Class Members of overtime compensation for all overtime hours worked in violation of the FLSA.

81.    Nonetheless, Lasalle failed to pay Powell and the Putative Class Members overtime for all hours these employees worked in excess of 40 hours in a workweek.

82.    Lasalle's failure to pay Powell and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime for all overtime hours worked made in good faith.

## COLLECTIVE ALLEGATIONS

83.    Powell brings her claims as a collective action under the FLSA.

84.    The Putative Class Members were victimized by Lasalle's pattern, practice, and/or policy which is in willful violation of the FLSA.

85.    Based on her experiences with Lasalle, Powell is aware Lasalle's illegal practices were imposed on the Putative Class Members.

86.    The Putative Class Members are similarly situated in all relevant respects.

87.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

88.    Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

89.    Rather, the Putative Class is held together by Lasalle's uniform automatic meal break deduction policy that systematically deprived Powell and the Putative Class Members of overtime pay for all overtime hours worked.

90.    The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

91.    Lasalle's failure to pay wages and overtime compensation for all overtime hours worked as required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

92.    Powell's experiences are therefore typical of the experiences of the Putative Class Members.

93.    Powell has no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

94.    Like each Putative Class Member, Powell has an interest in obtaining the unpaid overtime wages owed under federal law.

95.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Lasalle will reap the unjust benefits of violating the FLSA.

97.    Further, even if some of the Putative Class Members could afford individual litigation against Lasalle, it would be unduly burdensome to the judicial system.

98.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

99.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

100.    Among the common questions of law and fact are:

   a.    Whether Lasalle engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

   b.    Whether Lasalle's automatic meal break deduction policy deprived Powell and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

- 11 -

c. Whether Lasalle engaged in a common practice of requiring Powell and the Putative Class Members to complete mandatory pre-shift briefings "off the clock";

d. Whether the time Powell and the Putative Class Members spent completing mandatory pre-shift briefings is compensable under the FLSA;

e. Whether Lasalle failed to pay Powell and the Putative Class Members overtime for all hours worked in excess of 40 hours in a workweek, including hours worked during unpaid meal breaks and/or mandatory pre-shift briefings;

f. Whether Lasalle knew, or had reason to know, Powell and the Putative Class Members were requested, suffered, permitted, or allowed to during their unpaid meal breaks and/or before their shifts in violation of the FLSA;

g. Whether Lasalle's violations of the FLSA resulted from a continuing course of conduct; and

h. Whether Lasalle's violations of the FLSA were willful.

101. Powell and the Putative Class Members sustained damages arising out of Lasalle's illegal and uniform employment policy.

102. The overtime owed to Powell and the Putative Class Members will be calculated using the same records and using the same formula.

103. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Lasalle's records, and there is no detraction from the common nucleus of liability facts.

104. Therefore, the issue of damages does not preclude collective treatment.

105. Powell knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

106. Lasalle is liable under the FLSA for failing to pay overtime to Powell and the Putative Class Members.

107. Consistent with Lasalle's illegal automatic meal break deduction policy, Powell and the Putative Class Members were not paid the proper premium overtime compensation for all overtime hours worked.

108. As part of its regular business practices, Lasalle intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Powell and the Putative Class Members.

109. Lasalle's illegal automatic meal break deduction policy and mandatory pre-shift briefing practice deprived Powell and the Putative Class Members of overtime wages for all hours worked in excess of 40 hours in a workweek, which they are owed under federal law.

110. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

111. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

112. Those similarly situated employees are known to Lasalle, are readily identifiable, and can be located through Lasalle's records.

### CAUSE OF ACTION
### VIOLATIONS OF THE FLSA

113. Powell realleges and incorporates all other paragraphs by reference.

114. Powell brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

115.     Lasalle violated, and is violating, the FLSA by failing to pay Powell and the Putative Class Members overtime for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

116.     Throughout the relevant period, Lasalle expected and required Powell and the Putative Class Members to remain on-duty and be available to work during their unpaid meal breaks and outside of their scheduled shifts.

117.     Powell and the Putative Class Members have been harmed as a direct and proximate result of Lasalle's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Lasalle derived a direct and substantial benefit.

118.     Lasalle knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Powell and the Putative Class Members overtime compensation.

119.     Lasalle's failure to pay Powell and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay them overtime for all overtime hours worked made in good faith.

120.     Accordingly, Powell and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

## JURY DEMAND

121.     Powell demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Powell, individually and on behalf of the Putative Class Members, seeks the following relief:

        a.      An Order designating the FLSA Collective as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all

- 14 -

Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order pursuant to Section 16(b) of the FLSA finding Lasalle liable for unpaid back wages due to Powell and the Putative Class Members, as well as for liquidated damages in an amount equal to their unpaid compensation;

c.      Judgment awarding Powell and the Putative Class Members all unpaid overtime and other damages available under the FLSA;

d.      An Order awarding attorney's fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Philip Bohrer*

**Philip Bohrer (#14089)**
phil@borhrerbrady.com
**Scott E. Brady (#24976)**
scott@bohrerbrady.com
**BOHRER BRADY, LLC**
8712 Jefferson Hwy., Suite B
Baton Rouge, Louisiana 70809
225-925-5297 – Telephone
225-231-700 – Facsimile

**Michael A. Josephson***
TX Bar No. 24014780
**Andrew W. Dunlap***
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjoesphson@mybackwages.com
adunlap@mybackwages.com

**William C. (Clif) Alexander***
TX Bar No. 24064805
**Austin W. Anderson***
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

**Richard J. (Rex) Burch***
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**